IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF MAINE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER (603) 377-0099, WITH INTERNATIONAL MOBILE SUBSCRIBER IDENTITY 310260708156725 | Case No. 2:23-mj-00179-KFW<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Jonathan Duquette, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (603) 377-0099, with International Mobile Subscriber Identity 310260708156725, with listed subscriber Aurelio Casillas (the "Target Cell Phone"), whose service provider is T-Mobile US, Inc. ("T-Mobile"), a wireless telephone service with offices at 4 Sylvan Way, Parsippany, New Jersey. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.  Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the

information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am a Task Force Officer with the Federal Bureau of Investigation ("FBI"). I have been in this position since June 2015, and I have been a Task Force Officer in FBI's Boston Division since January 2018. I am also a Border Patrol Agent with the U.S. Border Patrol and have been in this position since December 2009. In my career, I have utilized various investigative tools and techniques, to include the use of search warrants involving cellular data.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841, 843, and 846 have been committed, are being committed, and will be committed by Target Subject Aurelio Casillas, a/k/a "Santos," and his associates. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

6. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

7. On about January 26, 2023, I received information from a confidential source of information ("CS-1"), that CS-1[1] had been contacted by a Facebook user, "Aurelio Casillas," (unique Facebook ID: 100053772346095), who was seeking to sell controlled substances to CS-1. Specifically, CS-1 received a photograph of a number of "sticks" or "fingers" (10-gram increments) of what appeared to be fentanyl. Along with the photograph, "Aurelio Casillas" sent the following text to CS-1: "would you be interested in working." I am familiar with this type of solicitation using social media platforms by drug suppliers looking for new clients and/or downstream distribution.

8. I have reviewed records associated with the "Aurelio Casillas" Facebook account from Meta Platforms, Inc., from which I learned that the Facebook account's subscriber is listed as Aurelio Casillas. The records also contained a verified telephone number associated with the Facebook account, listed as (603) 377-0099, the call number assigned to the Target Cell Phone.

9. I have reviewed records related to the Target Cell Phone provided by T-Mobile US, Inc. The subscriber for the Target Cell Phone beginning July 8, 2022, is listed as Aurelio Casillas. I have reviewed call data for the Target Cell Phone, from which I learned that the majority of its frequently made and received calls are with Maine-based numbers. Some of these frequent contacts were recognized by law enforcement to be associated with individuals involved in drug distribution, including

---

[1] CS-1 has prior criminal convictions, including for burglary and drug possession. CS-1 is a paid informant who has no current criminal charges pending. CS-1 has provided information to law enforcement in the past that has led to successful prosecutions, and has been deemed to be reliable.

one of the Target Cell Phone's top ten contacts: an individual who was recently indicted on federal drug charges.

10. A second confidential source ("CS-2"), who lives in Maine, provided information to the FBI about a fentanyl supplier who goes by the name "Santos." In about March 2023, CS-2[2] accompanied associates to Augusta, Maine to acquire fentanyl from "Santos." During this transaction, the CS-2 and their associates purchased four or five sticks or fingers of fentanyl from "Santos." Thereafter, CS-2 received a message on Facebook Messenger from "Aurelio Casillas," relating to drug trafficking; CS-2 and Aurelio Casillas, aka "Santos," then began communicating by telephone, using the call number associated with the Target Cell Phone, which "Santos" had provided to CS-2. CS-2 informed investigators that they believe "Santos" lives in New Hampshire or Massachusetts, though he has stayed for periods of time in and around Augusta, Maine.

11. I know from my participation in this investigation that between about May 24 and May 31, 2023, at the direction of the FBI, CS-2 successfully contacted "Santos" at the call number associated with the Target Cell Phone. "Santos" told CS-2 that he was staying in Boston and if CS-2 was willing to travel to him, he would "give something else for the trip." "Santos" asked if CS-2 wanted, "them on fingers ohh (sic) on a block." Ultimately, CS-2 and "Santos" arranged for the sale of 500 grams of fentanyl for $10,000.

---

[2] CS-2 has a minimal criminal history, including for possession of controlled substances. CS-2 began cooperating with law enforcement in order to receive leniency with respect to a pending charge. CS-2's information has been otherwise corroborated by law enforcement and has been deemed to be reliable.

12.     Thereafter, on about May 31, 2023, CS-2 participated in a controlled purchase from "Santos" in Amesbury, Massachusetts.  Before meeting with "Santos" at an agreed-upon location, CS-2 was equipped with audio and video monitoring and transmitting equipment, which was monitored by law enforcement throughout.  Ultimately, CS-2 purchased the agreed-upon fentanyl from "Santos," for $10,000, in two tinfoil wrapped packages.  The fentanyl later field-tested presumptively positive for fentanyl.  The total package weight was 594.9 grams.

### ADDITIONAL INFORMATION REGARDING WIRELESS CARRIERS

13.     In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records.  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest

to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

14. Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile's network or with such other reference points as may be reasonably available.

15. Based on my training and experience, I know that T-Mobile can collect cell-site data about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

16. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

17. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification

of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

18. I further request that the Court direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

19. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

Respectfully submitted,

Jonathan Duquette
Task Force Officer
Federal Bureau of Investigation

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedures

Date: Jun 12 2023

City and state: Portland, Maine

Judge's signature

Karen Frink Wolf, U.S. Magistrate Judge
Printed name and title